IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| ANGELA SINGLETON, | * |   |
| Plaintiff, | * |   |
| v. | * | Civil No. 1:22-2554-GLR |
| ELIZABETH MAZHARI, *et al.*, | * |   |
| Defendants. | * |   |
|   | * |   |

\* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court regarding the discovery dispute between Plaintiff Angela Singleton ("Plaintiff") and non-party Maryland Technology Development Corporation ("TEDCO") pursuant to Federal Rule of Civil Procedure 45(e)(2)(B). *See* ECFs 93-94. On September 24, 2024, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Chief Judge Russell referred this matter to me "specifically" for the purpose of "resolution of ECF 93," which is Plaintiff's Rule 45(e)(2)(B) letter. ECF 95. Pursuant to a jointly proposed briefing schedule, ECF 97, Plaintiff and TEDCO (collectively, the "Disputants") submitted arguments and authority in support of their positions. *See* ECFs 98-100. I have reviewed the filings and find no hearing necessary. *See* Loc. R. 105.6.

### PROCEDURAL BACKGROUND[1]

---

[1] Considering its mostly undisputed nature, the bulk of this chronology is drawn from Plaintiff's initial dispute letter, ECF 93, which TEDCO described as an "otherwise thorough chronology" subject to additional context, ECF 94, at 1. Where relevant to my decision, I have included additional information provided by the Disputants.

The dispute concerns the applicability of privilege or other reasons for non-production to documents produced by non-party ImpactHR, LLC ("ImpactHR"). On or about July 29, 2024, Plaintiff issued subpoenas, including to ImpactHR. ECFs 93, at 1; 98, at 1. According to TEDCO, ImpactHR provides human resources services for TEDCO. ECFs 94, at 1; 98, at 1. TEDCO asserts that ImpactHR "was at all times, and remains, under contract to TEDCO . . ., and stands in its shoes as TEDCO's alter ego—the functional equivalent of an in-house Human Resources Department." ECF 98, at 3.

The Disputants agree that "[a]ll parties were alerted to the issuances of" the aforementioned subpoenas and that TEDCO, a non-party, did not receive courtesy copies of them. ECFs 93, at 1; 94, at 1-2.[2] There were no objections before ImpactHR responded or motions to quash at any time. ECF 93, at 1. Plaintiff and TEDCO disagree about the scope of the subpoenas. Plaintiff contends that the material sought by the subpoenas is specific and relevant, *id.*, while TEDCO contends that the material sought is overbroad, not tailored, and "outside the scope of those that th[e] Court has previously determined appropriate for production in this case[,]" ECF 98, at 1. TEDCO asserts that the subpoenas "sought only documents belonging to TEDCO." ECF 94, at 2.

On August 20, 2024, Plaintiff's counsel communicated with ImpactHR's counsel about the subpoena and the production of responsive material. ECF 93, at 1. On September 10, 2024, ImpactHR's counsel provided Plaintiff and the defendants with a hyperlink to a shared digital file containing more than 1,000 digital files. *Id.* ImpactHR's counsel also notified Plaintiff's counsel that there were no redactions or documents withheld, and to her knowledge, no

---

[2] It is unclear whether and when, if at all, TEDCO received *notice*, even if no copy, of the subpoenas.

2

objections to the subpoena. ECF 99-1, at 1. On September 13, 2024, TEDCO's general counsel notified counsel for all parties in writing that the material produced by ImpactHR was protected by TEDCO's attorney-client privilege. ECF 98, at 2. TEDCO's general counsel demanded that the material be destroyed. ECF 93, at 1. Plaintiff sequestered the material. *Id.*

Beginning that day and continuing for several days, the Disputants exchanged proposals to resolve their apparent dispute. Plaintiff requested that TEDCO identify what material was privileged by September 17, 2024. *Id.* Plaintiff provided TEDCO with the email addresses of ImpactHR's principal and counsel and offered to contact the same on TEDCO's behalf, so that TEDCO could possess the responsive material for privilege review. *Id.* On September 16, 2024, TEDCO responded to Plaintiff's request, stating that "emails and attachments between TEDCO, directly or via ImpactHR, and the Office of the Attorney General [("OAG")] and/or Kollman & Saucier, P.A." and "a Workplace Study by Kollman & Saucier, P.A. conducted in 2019 was covered by [] attorney-client privilege." *Id.* at 1-2. TEDCO also proposed a limited waiver of its privilege if Plaintiff provided the documents that she intended to use at upcoming depositions for TEDCO to review for privilege. *Id.* at 2; ECF 98, at 4. Plaintiff rejected TEDCO's proposal and sought a withdrawal of the privilege claim, so that Plaintiff could use the sequestered material at the depositions, and present privilege claims to the Court after the depositions. *Id.*

The Disputants further discussed the basis for asserting privilege or otherwise withholding documents. Plaintiff deemed TEDCO's assertions too generalized and insufficient to "identif[y] which specific material within the responsive ESI" fell within the attorney-client privilege. *Id.* TEDCO responded that the privilege relates to "emails/attachments between TEDCO, directly or via ImpactHR, and: (i) [OAG] (specifically, attorneys Ira Schwartz, Jigita Patel, Lara Hjortsberg, and Teresa Carnell); and/or (ii) Kollman & Saucier, P.A. (including but

not limited to the Workplace Culture Study performed by the latter).” *Id.* TEDCO based its privilege claim on the grounds that "OAG's only authorized role is to serve as TEDCO's legal advisors, and that Kollman & Saucier, P.A. was (with OAG approval) retained as outside counsel, as the law permits then by law, OAG may only provide legal advice and services to TEDCO so, . . . OAG's communications with TEDCO are all within the context of rendering legal representation." *Id.* TEDCO again proposed a limited waiver of its privilege if Plaintiff provided the documents that she intended to use at upcoming depositions for TEDCO to review for privilege. *Id.*; ECF 98, at 4. Plaintiff again rejected TEDCO's proposal and notified TEDCO that she would present the dispute to the Court, which Plaintiff did on September 20, 2024. *Id.* at 2-3. Plaintiff's letter describes this chronology with respect to the ImpactHR production. *See* ECF 93. TEDCO's response references subpoenas to not only ImpactHR, its provider of human resources services, but also a second entity that provides computer network, cloud, and administration services. ECF 94.

In its representations to the Court, TEDCO argues that the subpoenas were overbroad, the subpoena exceeds the scope of relevance previously established by the Court, and that "it not be burdened with an extensive review of the documents produced" in response to the relevant subpoenas. ECF 98 at 1. TEDCO asserts that it "has consistently maintained that *some (not all)* of the material produced or to be produced may be protected by attorney-client and/or work product privilege or be subject to other legal duties to maintain their confidentiality." *Id.* at 2 (emphasis in original). TEDCO insists that it "cannot" reasonably assert privilege with particularity unless and until Plaintiff provides advance notice and copies of the documents she intends to use in this litigation. ECF 100 at 3. It also offered to provide the Court evidence of its relationship with ImpactHR. *Id.*

Plaintiff counters that TEDCO is attempting to inappropriately expand this dispute beyond privilege assertions, fails to demonstrate the existence of attorney-client or work product privilege, and does not establish that any applicable privilege has not been waived.  *See generally* ECF 99.  On that final point, Plaintiff argues that TEDCO has not demonstrated that ImpactHR is a third party within the protection of the privilege or that, even if ImpactHR is within the privilege, that the production by ImpactHR is not a waiver of the privilege.  *Id.* at 3-4.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45(e)(2)(B) provides a mechanism for recalling information produced in response to a subpoena that is claimed to be privileged or "protect[ed] as trial-preparation material[.]"  Fed R. Civ. P. 45(e)(2)(B).

The attorney-client privilege "affords confidential communications between lawyer and client complete protection from disclosure."  *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003) (citation omitted).  The proponent bears the burden of showing that the attorney-client privilege applies.  *Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 409 (D. Md. 2005).  To obtain the protection of the privilege, the proponent must demonstrate that the document "is a confidential communication between counsel and client made primarily for the purposes of obtaining legal advice or services from the attorney."  *Addi v. Corvias Management-Army, LLC*, 339 F.R.D. 594, 597 (D. Md. 2021).  The proponent must assert the attorney-client privilege "with particularity for each document, or category of documents," *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 267 (D. Md. 2008), "and general assertions of privilege are insufficient[,]" *Bost v. Wexford Health Sources, Inc.*, No. ELH-15-3278, 2017 WL 11453989, at *2 (D. Md. Jan. 31, 2017).  Because the attorney-client privilege "impedes the full and free discovery of the truth, and is in derogation of the public's

right to every [person]'s evidence," *In re Grand Jury Proc.*, 727 F.2d 1352, 1355 (4th Cir. 1984) (citations omitted), it "is to be narrowly construed," *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998).  Attorney-client communications "are not privileged merely because one of the parties is an attorney or because an attorney was present when the communications were made." *U.S. v. Cohn*, 303 F. Supp. 2d 672, 683 (D. Md. 2003); *see also Melada v. Giant of Maryland, LLC*, No. 20-1509-PJM, 2023 WL 4273370, at *1 (D. Md. June 28, 2023) ("Not every attorney-client communication is privileged.").

      The work product doctrine is broader in that it "protects from disclosure documents 'prepared in anticipation of litigation or for trial[.]'" *Black & Decker Corp. v. U.S.*, 219 F.R.D. 87, 91 (D. Md. 2003) (quoting Fed. R. Civ. P. 26(b)(3)).  The proponent of the doctrine bears the burden of showing that it applies, *Sandberg v. Virginia Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir. 1992), and that they did not waive it, *Neuberger Berman*, 230 F.R.D. at 418.  The work product doctrine "generally does not apply, unless the primary motivating purpose for creating the document is to assist in pending or impending litigation." *Id.*  To satisfy their burden, the proponent "cannot rely on conclusory statements in its memoranda; rather, as in the case of the attorney-client privilege, the proponent must provide specific factual support for its assertions." *Paice, LLC v. Hyundai Motor Co.*, 302 F.R.D. 128, 133 (D. Md. 2014).  Upon receiving such assertion, the Court examines the applicability of the doctrine to determine whether the materials are work product and, if so, whether an exception to non-disclosure exists.  *See In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017).

## ANALYSIS

      As contemplated by Rule 45(e)(2)(B), TEDCO notified Plaintiff of its claim and bases for recall, and Plaintiff sequestered and preserved the material while the matter is presented to the

Court. The core dispute is the applicability, if any, of the claims of privilege or another basis for non-disclosure.

*Attorney-Client Privilege*

The fundamental flaw in TEDCO's attorney-client privilege assertions is their blanket nature. TEDCO states that privileged documents include "emails (and any attachments thereto) by and between TEDCO—either directly or via its confidential human resources contractor, ImpactHR—and: (i) the TEDCO unit of the Maryland [OAG] . . . and/or (ii) Kollman & Saucier, P.A., an outside employment law firm" retained to perform a study involving legal advice. ECF 98 at 2. Just because TEDCO OAG is TEDCO's attorney does not mean that all communications between TEDCO and TEDCO OAG are entitled to protection pursuant to the attorney-client privilege. *See Cohn*, 303 F. Supp. 2d at 683 (communications "are not privileged merely because one of the parties is an attorney or because an attorney was present when the communications were made."); *Melada*, 2023 WL at 4273370, at *1. The Rules and the courts require more. Indeed, the Court recognizes, in both its decisions and its Local Rules, the need for particularized assertions on a document-by-document basis where possible (and by category if not). *See Victor Stanley*, 250 F.R.D. at 267 (describing the multi-step process for "properly assert[ing]" privilege through a privilege log); D. Md. Loc. R. Appendix A, Guideline 10(d) (setting forth information required when asserting privilege); *see also In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2020 WL 5525043, at *3 (D. Md. Sept. 14, 2020) (noting that *Victor Stanley* "defined with precision the obligations" imposed by the Federal Rules of Civil Procedure when asserting privilege).

TEDCO makes no such attempt here. Instead, it argues that to do so would be unduly burdensome. It does not cite, and the Court has not found, any authority supporting the implicit

notion that a court should take on, without much assistance, the proponent's burden of demonstrating the privilege's applicability. Indeed, that is the purpose and benefit of a privilege log. *See Est. of Bryant v. Balt. Police Dep't*, No. ELH-19-384, 2020 WL 6363965, at *1 (D. Md. Oct. 29, 2020) (assessing privilege assertions within the context of a Rule 45 subpoena after receiving a privilege log for forty-two documents and, subsequently, *in camera* review of the disputed documents).

      *Work Product Doctrine*

      Nor can the Court accept that the mostly unspecified documents are work product immune from disclosure and, as in this case, subject to recall. Nowhere does TEDCO identify the "pending or impending litigation" necessary to sustain a work product doctrine claim. *Neuberger Berman*, 230 F.R.D. at 418. As noted above, the Court lacks knowledge about the contents of all but one document—the workplace study—and thus their potential relevance to any litigation. Moreover, TEDCO fails to assert the existence of *any* pending or impending litigation relevant to the produced documents. *See, e.g.*, *Bryant*, 2020 WL 6363965, at *5 (declining to apply the work product doctrine where it was "unclear . . . whether the [documents] were drafted in anticipation of litigation"). Perhaps that is a product of their asserted lack of knowledge about what was produced. Even if that is true and an acceptable response under the circumstances, it cannot apply to the workplace study TEDCO identifies. TEDCO's identification of this specific document—which is not confirmed to have been produced by ImpactHR—suggests that TEDCO should be able to specify its bases for asserting privilege or work product. But TEDCO states only that the study concerns "any workplace issues found to

exist at TEDCO." ECF 98 at 2. The most generous read of this is that the document concerns the *potential* for litigation; without more, that differs from "pending or impending litigation."

*Confidentiality concerns*

TEDCO cites several categories of documents—aside from the alleged privileged and work product material—that should be addressed as part of this dispute. As Plaintiff notes, this dispute arose within the context of Rule 45(e)(2)(B), which concerns "a claim of privilege or of protection as trial-preparation material[.]" Fed R. Civ. P. 45(e)(2)(B). The Court does not necessarily read confidentiality and privacy within the scope of those terms. *See Goldwater Bank, N.A, v. Elizarov*, No. 21-0616-JWH, 2023 WL 4295129, at *3 (C.D. Cal. May 10, 2023). The thrust of TEDCO's request seems more appropriate as a motion for a protective order or to quash the subpoena, *see* Fed. R. Civ. P. 26(c), neither of which have been made. The Court is amenable to considering such a motion if timely and properly supported.

\*   \*   \*

As noted above, the Court will not grant TEDCO any relief at this point, yet it does not agree with all of Plaintiff's assertions either. The attorney-client privilege *may* be available to communications involving TEDCO and its counsel, as well as documents involving ImpactHR and TEDCO's counsel.[3] The same *may* be true with work product materials, to the extent they exist and are connected to litigation as required by law. But TEDCO has not carried its burden.

---

[3] On the latter point, the Court assumes the privilege's applicability but does not decide it, given the insufficiency of the privilege assertion. However, the Court lacks evidence, by declaration, affidavit, or exhibit, demonstrating that ImpactHR falls within the attorney-client relationship. *See Flo Pac, LLC v. NuTech, LLC*, No. WDQ-09-510, 2010 WL 5125447, at *8 (D. Md. Dec. 9, 2010) (requiring that "[a] detailed factual showing is necessary to establish the relationship between the client and a third party that is sought to be included within the protection of the attorney-client privilege"). Nor does the Court assume or otherwise address waiver. Notwithstanding that the privilege has not been sufficiently invoked at this time, the Court lacks sufficient information to find any privilege waived by the production by ImpactHR.

The Court's determination is without prejudice to TEDCO to support, in accordance with the applicable rules and jurisprudence, any claims of privilege or other bases for recall and non-disclosure. Whether and when TEDCO chooses to do so is not for the Court to direct or instruct at this time. But there are at least a few conceivable possibilities. If, as the parties indicated, depositions occur this week, TEDCO's counsel could attend, learn which documents may be used, and lodge their objections accordingly, with the ability to provide a more fulsome record to the Court for determinations of privilege and any excising of objectionable testimony. *See, e.g.*, *Mylan Pharms., Inc., et al. v. Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., et al.*, No. 03-CV-180, 2006 WL 8442731 (N.D. W. Va. Apr. 12, 2006). If the scheduling order is extended to permit time to resolve this and other pending disputes, *see* ECFs 103, TEDCO may pursue other avenues to support their assertions before any depositions. For example, it may obtain a copy of the production from ImpactHR to identify the presence of the workplace study in the production or other documents that TEDCO believes so clearly fits within the privilege or the work product doctrine. Based on TEDCO's representations regarding its relationship with ImpactHR, such a request does not seem farfetched. Obtaining and providing a copy of the relevant subpoenas may aid in assessing the parties' positions. Whatever course TEDCO chooses, shifting its work and burden to the Court—rather than making affirmative assertions consistent with the process described in *Victor Stanley* and other opinions—is not appropriate at this juncture.

## CONCLUSION

For these reasons, the Court DENIES WITHOUT PREJUDICE any relief based on TEDCO's claims of privilege or trial-preparation material pursuant to Federal Rule of Civil Procedure 45(e)(2)(B). The Disputants are DIRECTED to provide a status report within fourteen (14) days concerning this dispute, indicating whether (i) the dispute remains active and (ii) whether

any Disputant intends to seek further relief pursuant to Federal Rule of Civil Procedure 45(e)(2)(B) or any other Rule with respect to the documents raised in the Disputants' letters.  There must be a meaningful meet and confer regarding these issues before filing the status report.  Either Disputant may, within that time, brief any other motion or request, consistent with the issues raised in this order, regarding the material at issue.

Date: October 30, 2024

_____/s/_____
Charles D. Austin
United States Magistrate Judge
