IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANGELA SINGLETON, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 1:22-cv-2554-GLR |
| ELIZABETH MAZHARI, *et al.*, | * | |
| Defendants. | * | |

\*       \*       \*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Angela Singleton's Motion to Compel or for Civil Contempt.[1]  (ECFs 123, 126.)  I have considered the relevant matters in this case and the parties' briefs (ECFs 123-24, 126-27).  I find that no hearing is necessary.  *See* D. Md. Loc. R. 105.6 (D. Md. 2025).  For the reasons stated below, the Court DENIES the Motion.  A separate order shall follow.

## I.    BACKGROUND

This discovery dispute arises from Plaintiff's contention that non-party Maryland Technology Development Corporation ("TEDCO") has failed to comply with Judge Abelson's March 14, 2024 opinion and order.  (Pl.'s Motion to Compel, ECF 123-1 ("Pl's Mot."), at 10-21.)  In his opinion and order, Judge Abelson found, among other things,

---

[1] Chief Judge Russell, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, referred this case to a magistrate judge for resolution of discovery disputes that included Plaintiff's request for permission to file a motion for sanctions and/or civil contempt. (*See* ECFs 70, 72.)  Judge Abelson was the assigned magistrate judge at that time.  On September 20, 2024, the Court reassigned the case to the undersigned for discovery. The pending Motion relates to that original discovery dispute and request within the scope of Judge Russell's May 2024 referral.

that TEDCO's objections to Plaintiff's subpoenas were substantially justified, and

aspects of Plaintiff's discovery requests exceeded the bounds of Federal Rule of Civil

Procedure 26(b)(1) and 45(d)(1).  (ECF 63, at 2-4.)  Judge Abelson adjusted the start

date to January 1, 2017; broadened the scope of discovery beyond Defendants' "personal

acts;" and required TEDCO to provide "a list of which personnel were placed on

performance development plans in 2019."  (*Id.* at 2 (cleaned up).)  He then provided a

custodian list and relevant timeframes for requests 1 and 3:[2]

> Stephen Auvil – January 1, 2017 through December 31, 2020 (6 months
> after Plaintiff's June 19, 2020 termination)
> George Davis – January 1, 2017 through December 31, 2020
> Elizabeth Mazhari – January 1, 2017 through December 31, 2020
> McKeever Conwell – January 1, 2017 through December 31, 2020
> Angela Singleton – January 1, 2017 through December 31, 2020
> Linda Goins – January 1, 2017 through December 31, 2020
> Linda Singh – December 1, 2019 through December 31, 2020
> Jennifer Hammaker – September 1, 2019 through December 1, 2019
> Arti Santhanam – September 1, 2019 through December 1, 2019
> Tammi Thomas – September 1, 2019 through December 1, 2019
> Tim Wilson – January 1, 2020 through December 31, 2020
> John Wasilisin – January 1, 2017 through December 31, 2020

(*Id.* at 5.)  The opinion and order further provided that:

> TEDCO (or its vendor) should run search term reports ("STRs") for the
> search terms Plaintiff requests. Surely, certain terms will hit on volumes of
> documents that will be unduly burdensome and disproportionate to the
> needs of the case. Accordingly, Plaintiff and TEDCO shall engage in
> meaningful and concrete conferral, such as modifying search terms,
> narrowing time frames with respect to particular search terms, applying
> particular search terms only to particular custodians, and the like—a
> process that is necessarily iterative as narrower STRs are generated, until

---

[2] Request 1 seeks "[a]ny and all documents, communications, and/or recordings,
whether video or otherwise, which evidence any and all meetings where Plaintiff was
present and/or was the topic of discussion."  (ECF 123-5, at 2.)  Request 3 seeks "[a]ny
and all communications between and/or among your employee, including, but not
limited to, George Davis, Elizabeth Mazhari, and Stephen Auvil, which refers to
Plaintiff."  (*Id.* at 3.)

the set of documents to review reaches a reasonable volume, proportionate to the needs of the case.

(*Id.*)  Shortly thereafter, on March 28 and April 6, 2024, TEDCO submitted what it deemed as material responsive to Plaintiff's subpoenas and compliant with Judge Abelson's order and opinion.[3]  (*See* ECFs 123-3, 123-4, 124-4.)  Plaintiff believed that TEDCO's response was inadequate and again sought court intervention.  (Pl.'s Mot., at 6.)

In a May 20, 2024 letter order, Judge Abelson observed, among other things, that the "submissions indicate that TEDCO has produced all documents responsive to Plaintiff's discovery requests that fall within the timeframes reflected in the Court's March 14 order."  (ECF 80, at 2.)  Judge Abelson further credited TEDCO's view that "if it has indeed produced all responsive documents in its possession, custody, or control," it was unnecessary to require additional iterative processes such as negotiated search protocols.  (*Id.*)  Nonetheless, Judge Abelson allowed the parties to submit a joint status report addressing whether documents existed that fell within the scope of the opinion and order, were responsive to Plaintiff's requests, and were in TEDCO's possession, custody, or control.  (*Id.*)  He directed the parties, before the filing of any sanctions motion, to meet and confer in an effort to resolve any disputes and, if disputes persisted and a party believed "the high standards for sanctions . . . are satisfied," notifying the Court of such dispute and propose an agreed briefing schedule.  (*Id.*)

---

[3] These materials resulted from a search covering "the pertinent period specified for that individual in the Court's May 14, 2024 Opinion and Order and included the following threshold search terms: 'singleton', 'angela', 'asingleton', 'steuart', and 'asteuart'."  (ECF 124-6, at 24.)

Between July and December 2024, counsel for Plaintiff and TEDCO attempted to resolve their various discovery disputes by email. (*See* ECF 124-6.) After exchanges of objections during July 2024, TEDCO's counsel offered—in August and again in September—to have Terry Rauh, TEDCO's Chief Operations Officer,[4] conduct searches of all twenty-seven (27) search terms listed in Plaintiff's First Good Faith Letter[5] within the accounts of Santhanam, Singh, and Thomas. TEDCO asserted that these individuals' accounts were the only ones on the custodian list in its possession, custody, or control. (*Id.* at 2, 10, 14-25.) In exchange, TEDCO sought and agreement that this search satisfied its obligations, bringing the ongoing disputes to their conclusion. (*Id.* at 14.) Plaintiff rejected TEDCO's offer, sought a search for all terms for all custodians, and requested a privilege log for all withheld material. (*Id.* at 13.)

Not having reached a resolution come 2025, the parties filed their joint status report pursuant to the May 20, 2024 letter order. (ECF 121.) Plaintiff articulated the same objection to each of TEDCO's responses. The gist of the objection was that TEDCO failed to use all search terms, provide requested materials, and provide a privilege log if any materials were withheld, and that Plaintiff challenged designation of any privileged material due to the lack of proper assertion via privilege log. (*Id.* at 6, 8, 11-15, 17.) TEDCO, in response, tailored its arguments as to each request. (*See id.* at 6-18.) The

---

[4] Mr. Rauh "led the effort to search for, assemble and review the documents responsive to the pre-trial discovery propounded to TEDCO[.]" (ECF 124-4, at ¶ 1.)

[5] The search terms include, among other things, discipline, reprimand, performance, discriminate, discrimination, hostile, retaliate, retaliation, EEOC, MCCR, report, unfair treatment, unfair, inequitable, disparate, bonus, Angela, Black, African-American, and performance development plan. (ECF 123-5, at 8-9.) A previous order from Judge Abelson deemed unduly burdensome and disproportional Plaintiff's demand to run these terms against all custodians' documents for the period at issue. (*See* ECF 63, at 3.)

parties agreed to a briefing schedule for Plaintiff's motions to compel and for sanctions or civil contempt, TEDCO's opposition to the same and its sanctions motion, and Plaintiff's opposition to any TEDCO request for sanctions. (*Id.* at 18.) The Disputants complied with the deadlines, although TEDCO's opposition did not include a request for sanctions. (*See* ECFs 123, 124.) On February 18, 2025, Plaintiff requested leave to respond to TEDCO's opposition, which TEDCO opposed. (ECFs 126, 127.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 45 permits parties to "issue subpoenas to [non-parties] in possession of relevant information, seeking production of 'designated documents, electronically stored information, or tangible things in that [non-party]'s possession, custody, or control.'" *Am. Home Assurance Co. v. KBE Bldg. Corp.*, No. 13-1941-CCB, 2015 WL 348292, at *12 (D. Md. Jan. 13, 2015) (quoting Fed. R. Civ. P. 45 (a)(1)(A)(iii)). "The scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Hall v. Balt. Police Dep't*, No. 24-1137-RDB, 2025 WL 509130, at*4 (D. Md. Feb. 13, 2025); *see also Singletary v. Sterling Transp. Co., Inc.*, 289 F.R.D. 237, 240-41 (E.D. Va. 2012); *Papanicolas v. Project Execution & Control Consulting, LLC*, No. 12-1579-CBD, 2015 WL 1242755, at *2 (D. Md. Mar. 17, 2015).

"Where . . . the discovery dispute concerns a non-party, courts exercise greater vigilance and scrutiny." *Hall*, 2025 WL 509130, at *5. Non-party status receives "'special weight'" that requires "an even more 'demanding and sensitive' inquiry than the one governing discovery generally." *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (quoting *In re Public Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005)); *accord Garrity v. Governance Bd. of Cariños Charter Sch.*, No. 20-340-MV/KK, 2021

WL 3033278, at *3 (D.N.M. July 19, 2021) ("While the court has considerable discretion with regard to regulating discovery which is exchanged in a lawsuit, discovery from third-parties in particular must, under most circumstances, be closely regulated." (internal quotation marks and citation omitted)).  As the Fourth Circuit explains,

> Nonparties are "strangers" to the litigation, and since they have "no dog in [the] fight," they have "a different set of expectations" from the parties themselves. Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery. . . .

*Jordan*, 921 F.3d at 189 (internal quotation marks and citations omitted).  "In tandem, Rules 26 and 45 limit the discovery allowed under a non-party subpoena in four fundamental ways, and courts may quash or modify a subpoena if the subpoena fails to limit discovery in any one of these four ways."  *Hall*, 2025 WL 509130, at *5; *see also Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012) ("Although Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed, taking into consideration facts peculiar to their status as a non-party, those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26.").  First, the material "sought must be 'relevant to any party's claim or defense.'"  *Jordan*, 921 F.3d at 188 (quoting Fed. R. Civ. P. 26(b)(1)).  A subpoena is relevant if it creates "any possibility that the [material] sought may be relevant to the claim or defense of any party."  *O'Malley v. Trader Joe's East, Inc.*, No. 19-3273-RDB, 2020 WL 6118841, at *3 (D. Md. Oct. 15, 2020) (internal quotation marks and citation omitted).

Second, the material cannot be privileged.  Fed. R. Civ. P. 45(d)(3)(A)(iii).

Third, the discovery requested by a subpoena must "be 'proportional to the needs of the case.'"  *Jordan*, 921 F.3d at 188 (quoting Fed. R. Civ. P. 26(b)(1)).  In determining whether discovery is proportional, courts consider:

> the importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to relevant information, the
> parties' resources, the importance of the discovery in resolving the issues,
> and whether the burden or expense of the proposed discovery outweighs
> its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Fourth, a subpoena cannot "subject[] a person to undue burden."  Fed. R. Civ. P.

45(d)(3)(A)(iv).  In determining whether undue burden exists, courts employ a "more

demanding variant of the proportionality analysis," given that non-parties "are strangers

to the litigation" with "no dog in the fight" and expectations much different from the

parties.  *Jordan*, 921 F.3d at 189 (citation omitted).  The undue burden inquiry should

focus on:

> whether the benefits of discovery to the requesting party outweigh the
> burdens on the recipient [and involve consideration of] the requesting
> party's need for [the material,] . . . whether the material sought] likely (not
> just theoretically) ha[s] marginal benefit in litigating important issues . . .
> [, whether the material] is available to the requesting party from other
> sources . . . the dollars-and-cents costs associated with a large and
> demanding document production . . . [, and whether the subpoena] is
> overbroad—that is, when it seeks information beyond what the requesting
> party reasonably requires.

*Id*. at 189-90.  The requesting party bears the burden of establishing relevance and

proportionality, while the party resisting discovery bears the burden of demonstrating

why discovery should not be permitted, such as privilege or undue burden.  *O'Malley*,

2020 WL 6118841, at *2; *see also Boshea Compass Mktg., Inc.*, No. 21-309-ELH, 2021

WL 4425765, at *5 (D. Md. Sept. 27, 2021).

## III.    ANALYSIS

By and large, Plaintiff seeks to have TEDCO held in civil contempt for allegedly

violating Judge Abelson's March 14, 2024 opinion and order because "TEDCO did *not*

produce all responsive documents in its possession, custody, or control[,] and [] more

material remains undisclosed and withheld."[6]  (Pl.'s Mot., at 19, 17 (emphasis in original).)  Plaintiff presents three arguments in support.  In contrast, TEDCO avers that it has provided all material responsive to Plaintiff's subpoenas as required by the March 14, 2024 opinion and order.  (TEDCO's Opposition, ECF 124-2 ("TEDCO's Opp'n"), at 11-12.)  In TEDCO's view, Plaintiff's request relies on speculation that other discoverable material exists while failing to explain what such materials might be and, perhaps more importantly, their benefit to litigating the issues in this case.  (*Id.*)  For the following reasons, the Court agrees with TEDCO and denies Plaintiff's Motion.

Rule 45 demands the requesting party demonstrate the "'need for discovery' specifically from a third party" rather than a named party.  *Est. of Green v. Hartford Life & Accident Ins. Co.*, No. 24-1910-ABA, 2025 WL 834068, at *6 (D. Md. Mar. 17, 2025) (quoting *Jordan*, 921 F.3d at 189).  "In assessing need, a court should consider not only whether the information sought will 'likely (not just theoretically) have marginal benefit in litigating important issues,' but also whether the information is available from other sources."  *People for Ethical Treatment of Animals, Inc. v. Vital Farms, Inc.*, No. 22-24, 2023 WL 2933303, at *4 (E.D. Va. Apr. 13, 2023) (quoting *Jordan*, 921 F.3d at 189).  This involves an explanation why the sought information—or comparable information—is unavailable from a party to the litigation "or, in appropriate

---

[6] Aside from civil contempt, Plaintiff seeks an order directing TEDCO to provide responsive material to all nine requests; fining TEDCO $500 a day "unless and until it executes a service agreement with an eDiscovery vendor, at its expense, to run the search terms for all custodians" in the March 14, 2024 opinion and order "and provide a hit report to Plaintiff;" requiring the vendor to "provide affidavits averring to search parameters and steps actually taken in searching for and producing responsive materials to Plaintiff;" and, "[o]nce the vendor provides a hit report to Plaintiff," requiring TEDCO to produce any material not produced to date.  (Pl.'s Mot., at 19-21.)

cases, from other third parties that would be more logical targets for the subpoena."
*Jordan*, 921 F.3d at 189.

Unsurprisingly, neither Rule 26 nor 45 approve of "fishing expeditions" conducted in search of evidence that a requesting party fails to show appropriate under the Federal Rules. *Gross v. Morgan State Univ.*, No. 17-448-JKB, 2018 WL 9880053, at *6 (D. Md. Feb. 9, 2018); *see also Topline Sols., Inc. v. Sandler Sys., Inc.*, No. 09-3102-ELH, 2017 WL 1230817, at *5 (D. Md. Apr. 3, 2017) ("Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." (internal quotation marks and citation omitted)). All of Plaintiff's arguments fail because, notwithstanding whether TEDCO possesses other discoverable materials, at no point does the Motion demonstrate the need for the discovery that she alleges TEDCO is withholding. In the Court's view, within the context of all that has transpired here, Plaintiff seeks permission "to engage in an unwieldy, burdensome, and speculative fishing expedition." *Sandler*, 2017 WL 1230817, at *5 (internal quotations and citation omitted).

To set the stage, it is helpful to identify matters relevant to the alleged deficiencies. Plaintiff first argues that TEDCO has not produced all the responsive material in its possession, custody, or control regarding Singh, Goins, and Defendants Auvil and Mazhari between December 1, 2019 and December 31, 2020. (Pl.'s Mot., at 10.) Plaintiff identifies several items received in discovery from other sources—namely, Defendants Auvil and Mazhari as well as non-party ImpactHR, LLC ("ImpactHR")—that she claims demonstrate the falsity of TEDCO's assertion of completeness:

- Exhibit 4 was obtained from ImpactHR on September 10, 2024 and from Defendant Stephen Auvil on or around August 15, 2024. (Pl.'s Mot., at 10.)

9

It is entitled "Background on Organizational Changes" and includes Singh's name at the end. (ECF 123-6, at 2-3.) The document references the name "Angela" numerous times and appears to provide a synopsis of various discussions with "Angela" regarding an action plan. (*See id.*)

- Plaintiff obtained Exhibit 5 from TEDCO on July 5, 2024. (Pl.'s Mot., at 11.) Within the document are May 4 and 5, 2020 emails between Plaintiff, Defendant Elizabeth Mazhari, Singh, and Goins regarding an action plan devised for Plaintiff. (ECF 123-7, at 2-3.)

- Exhibit 6 reflects May 2020 emails between Singh, Goins, and TEDCO's counsel concerning the proper protocol for renewing or extending employment contracts. (*See* ECF 123-8.) The name "Angela" and "Tammi" appears in these emails in several places. (*See id.*)

- Exhibit 9 contains May 18, 2020 emails between Thomas, Singh, and Goins regarding intended discussions at a bi-weekly meeting Singh held with Thomas. (ECF 123-11, at 2-3.) The name "Angela" appears twice. (*See id.* at 2.)

- Exhibit 10 reflects a September 30, 2019 email from Goins to Defendant Auvil with the subject line "let me know when you want to meet prior to meeting with Angela[.]" (ECF 123-12, at 2.)

- Exhibit 11 includes June 2020 emails between Goins and Defendant Mazhari regarding a time to meet "to put a plan together for Angela[.]" (ECF 123-13, at 2.)

- Exhibit 12 involves July and August 2020 emails between Goins, Singh, and Defendants Auvil and Mazhari about a meeting with "Angela" and

whether "Angela" signed a severance agreement or if TEDCO was still paying her.  (ECF 123-14, at 2.)

- Exhibit 13 has emails showing that Singh, Goins, and Defendant Mazhari retrieved Plaintiff's laptop on July 31, 2020 and disclosed that a TEDCO employee requested access "to Angela's email[.]"  (ECF 123-15, at 2.)

- Exhibit 14 encompasses May 2020 emails between Goins and Defendants Auvil and Mazhari opining on Plaintiff's management experience.  (ECF 123-16, at 2-3.)

- Exhibit 15 includes March 2020 emails between Goins and Defendant Auvil concerning Plaintiff's request to have her job re-classified and to receive a salary increase.  (*See* ECF 123-17, at 2-3.)

- Exhibit 16 provides Plaintiff's February 2020 request and Goins' subsequent response.  (*See* ECF 123-18, at 2-3.)

- Exhibit 17 shows a June 11, 2020 email conversation between Goins and Defendant Mazhari, where Goins informed Mazhari that TEDCO could terminate "Angela" earlier than the requisite 90 days if she did not make "any meaningful progress towards the goals in the development[.]"  (ECF 123-19, at 2.)

- Exhibit 18 represents June 2020 emails between Goins and Defendants Auvil and Mazhari concerning the offboarding of Plaintiff's laptop and email account.  (*See* ECF 123-20.)

A. *Plaintiff fails to demonstrate that additional discovery is proportional and of substantial importance to the issues in this case.*

Even if TEDCO has failed to disclose certain emails, Plaintiff does not explain why these emails demonstrate a need for additional discovery that she alleges a non-party is withholding from disclosure and holds enough significance to warrant additional searching and production. Instead, she offers these emails as evidence that TEDCO might be withholding emails. That suggestion that strikes the Court as different from evidence that TEDCO is in possession, control, or custody of emails of a volume or significance warranting additional searches and productions. Put simply, there is a proportionality problem, especially when applying Rule 45's limitations. This discovery dispute has persisted for several months—with numerous exchanges between the disputing parties, extensive participation from non-party TEDCO, and multiple matters presented to the Court for resolution. Within that context and in the absence of more concrete demonstrations from the Plaintiff, the Court does not find that any benefits of additional discovery outweigh the burdens on non-party TEDCO. TEDCO has disclosed a significant amount of evidence and appeared to negotiate and attempt resolution in good faith (without success). The Court is unpersuaded that the potential material sought has any marginal benefit in litigating issues critical to the claims here. *See Jordan*, 921 F.3d at 189-90. Of course, it may be difficult for a party to explain the importance of something that it does not have. But given the volume and duration of discovery, and the presence of these materials that Plaintiff says demonstrate some non-compliance, the Court expects that a stronger showing of relevance and importance could be made if the materials were so critical to the claims. As *Jordan* notes, non-party discovery may be inappropriate even if the non-party possesses information that would

12

fall within the scope of discovery from a party.[7]  The Court does not find that the assertions here satisfy the requirements of Rules 26 and 45 in light of what has transpired to date.  For this reason, independent of those that follow, the Court denies the Motion to Compel.

B. *Plaintiff's specific challenges for various custodians fail to demonstrate improper withholding and a need for additional discovery.*

The Court further agrees with TEDCO that the several items received in discovery from ImpactHR and Defendants Auvil and Mazhari do not refute TEDCO's proffered reasons for an inability to find responsive documents involving Singh, Goins, and Defendants Auvil and Mazhari.

As to Defendants Auvil and Mazhari, Mr. Rauh represented that all responsive documents pertaining to them have been provided as a result of their receiving "full access by TEDCO to their TEDCO emails and shared drive folders."  (ECF 124-4, at ¶ 7.)  As a result, TEDCO maintains that it lacks custody or control "over any materials beyond those already produced as a result of its having permitted [Auvil and Mazhari] access to its business records and email accounts."  (*Id.*)  Absent a compelling counterargument, the Court finds these contentions persuasive.  *See Lynn v. Monarch*

---

[7] The Court acknowledges the observation in the March 14, 2024 Memorandum Opinion that *Jordan*'s reasoning does not fit neatly onto the facts of this case because, based on the facts that all parties in this litigation were employed by TEDCO, TEDCO is not a "stranger" in the way that *Jordan*'s third-party was.  (ECF 63 at 4 n.2.)  Like Judge Abelson, the undersigned declines to wade further into the waters of what constitutes a true "stranger" or "bystander."  Proportionality remains relevant, whether the party is a "bystander" or not.  The Court would reach the same conclusions when applying Rule 26's proportionality and burden considerations to this circumstance involving extensive discussions and searches guided by multiple rulings and directives from the Court.  On that point, it is also worth noting that, as discussed below, TEDCO has provided Defendants "full access" to their TEDCO files, allowing for something more akin to broad party discovery for those individuals whose actions are central to this litigation.

*Recovery Mgmt., Inc.*, 285 F.R.D. 350, 361 (D. Md. 2012) (observing that although a non-party may be compelled to disclose documents in their possession, Rule 26 "instructs the Court to limit the frequency or extent of discovery otherwise allowed if . . . the discovery[] sought can be obtained from some other source that is more convenient, less burdensome, or less expensive"). Plaintiff fails to refute Mr. Rauh's representation. Thus, it remains undisputed that TEDCO provided Defendants Auvil and Mazhari access to their emails and shared drive folders and, as a result, they both had access to any responsive material in their TEDCO emails and shared drive folders between December 1, 2019 and December 31, 2020. Additional discovery from TEDCO regarding these individuals is inappropriate where the material, if it exists, can be obtained from another source, especially a party. *See Jordan*, 921 F.3d at 189. Plaintiff does not demonstrate that there is information pertaining to both Defendants within the scope of discovery that TEDCO would have that Defendants have not produced or would not otherwise have. The Court must deny any further requests to TEDCO relevant to Defendants Auvil and Mazhari.

As to Goins, Mr. Rauh represents that the lack of emails regarding Goins is the result of Goins' departure from TEDCO years ago and the loss of access to her email account within 90 days of that departure. (*Id.* at ¶ 5.) Mr. Rauh explains that upon the 90th day after a departure, a former employee's email account is reassigned or or otherwise repurposed (as a cost-saving measure) and any related software license is provided to a new employee, causing deletion of contents in the departed employee's account. (ECF 124-6, at 24; *see* Pl.'s Mot., at 12-13.) Also, TEDCO contends that Plaintiff obtained any Goins emails referencing Plaintiff as a result of TEDCO providing Plaintiff with Goins' contact information, not any search of information in TEDCO's

14

possession.  TEDCO emphasizes that as an independent contractor, Goins used the email provided by her employer, ImpactHR, rather than any email provided and controlled by TEDCO.  (TEDCO's Opp'n, at 14; *see also* ECF 124-6, at 24.)

Plaintiff challenges Mr. Rauh's representation in two ways.  First, Plaintiff offers evidence that on or about June 19, 2020, Defendant Mazhari had access to Plaintiff's account.  (*See* ECF 123-21.)  Second, Plaintiff offers an unsworn, unsigned affidavit purported to be from Christopher Steinbach, President and CEO of TEDCO's former managed service provider the Newberry Group, Inc. ("Newberry").[8]  (ECF 123-22.)  The document disputes Mr. Rauh's characterization, contending, among other things, that Newberry never reassigned an email account and that Rauh conflates email reassignment with migration of a Microsoft software license (which, according to this document, does not affect the contents of an email inbox).  (ECF 123-22, at 3 (cleaned up).)  In defense of its contentions, TEDCO invites the Court to disregard unsworn assertions excerpted from an unknown and unverified document.  (TEDCO's Opp'n, at 14.)  TEDCO offers additional information from Mr. Rauh regarding, among other things, Microsoft's retention policies.  (ECF 124-7, at ¶5.)  Specifically, Mr. Rauh states that these policies "clearly indicate that removing a license without converting a mailbox, results in data retention for 30 days, after which the mailbox and its contents are permanently deleted.  *Id*.  This directly impacts access to historical emails and contradicts Newberry's assertion that such actions "have no effect on stored data."  (ECF 124-7, at ¶ 3-5; *see also*, ECF 123-22, at ¶2.)

---

[8] Mr. Rauh confirms Newberry's role, "as part of its routine management duties," in handling TEDCO's software licensing and reassigning email accounts for former TEDCO staff.  (ECF 124-7, at ¶ 4.)

The Court does not find that Plaintiff's challenges refute Mr. Rauh's representation or, more importantly, otherwise justify additional discovery from TEDCO regarding Goins.  First, Defendant Mazhari's access to Plaintiff's email account for a single day does not discredit any assertion that general practice causes deletion of a former TEDCO employee's email account contents 90 days after the employee departs. Second, the Court agrees with TEDCO that the unsworn, unsigned affidavit does not discredit the sworn representation regarding data retention and repurposing and reassigning email accounts and software licenses.  At bottom, nothing in Plaintiff's argument convinces the Court that in this circumstance, repurposing a Microsoft Office 365 license cannot—directly or otherwise—lead to permanent loss of email contents.

As to Singh, Mr. Rauh represented that there were "no responsive documents (including emails)[.]"  (ECF 124-4, at ¶ 6.)  Even if TEDCO failed to disclose certain emails, Plaintiff still does not explain why the emails involving Singh demonstrate a need for additional discovery that she alleges TEDCO is withholding from disclosure. Therefore, Plaintiff's motion to compel as to Singh is denied.

C. *Neither the expiration of TEDCO's litigation hold nor volume of a different non-party's response suggest improper withholding.*

Plaintiff advances two other reasons supporting her challenge to TEDCO's assertion that it has complied with its discovery obligations in this case.  First, she points to TEDCO's February 11, 2021 litigation hold directing its employees to preserve materials potentially relevant to her TEDCO employment.  (ECF 123-24, at 2; *see* Pl.'s Mot., at 14, 14 n.7.)  Plaintiff insists that the absence of any written release of this hold shows that TEDCO possesses additional responsive material.  (Pl.'s Mot., at 14.)  But TEDCO counters that the litigation hold was lifted—verbally—after the passage of 90

days after the Equal Opportunity Employment Commission dismissed her complaint that precipitated the litigation hold.  (TEDCO's Opp'n, at 15.)  That is, the hold was based on a matter that expired before this litigation was filed.  (*Id.*; *see* ECF 123-23.)

Second, Plaintiff cites the fact that designData Systems, Inc. ("designData") received a hit of more than 250,000 responsive documents to Plaintiff's subpoena and insists this demonstrates that TEDCO has "voluminous documents" that should have been produced pursuant to Judge Abelson's March 14, 2024 opinion and order.  (Pl.'s Mot., at 15.)

The Court rejects these arguments.  The second argument finds no traction, as the designData subpoena sought, as TEDCO describes, "a vastly broader array of materials; from a much wider list of custodians; extending over a much longer temporal range than those sought from TEDCO."  (TEDCO's Opp'n, at 16.)  A hit related to designData's subpoena does not indicate that TEDCO has failed to produce all material responsive and proportional based on the guidance in the Court's prior orders.  The rationale of the first argument could fare better under the right circumstances.  While it may draw scrutiny, the lifting of a litigation hold does not necessitate a finding that TEDCO has failed to comply with its obligations required by Rule 45 and the Court's orders.  Important here is the reason for that hold.  It appears tethered to potential litigation distinct from this one.  Plaintiff does not convincingly refute the timeline and rationale for the removal of the litigation hold tethered to her EEOC complaint (and maintained through the period such complaint was viable).[9]  In light of this analysis, the Court denies Plaintiff's motion to compel.

_____

[9] It is not clear that Plaintiff alleges a violation of the duty to preserve potential discovery.  But the Court would find that she fails to show TEDCO did not comply with a

17

D. *Civil contempt is inappropriate here.*

It comes, then, as no surprise the Court denies Plaintiff's Motion for Civil Contempt.  A party seeking civil contempt must establish the following by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (cleaned up).  The first element exists by virtue of Judge Abelson's rulings.  On the second element, the March 14, 2024 opinion and order both favored and disfavored Plaintiff.  While Judge Abelson required TEDCO to produce material responsive to her subpoenas, he concluded that some requests were not proper and adjusted such requests in TEDCO's favor.

Furthermore, Plaintiff fails to satisfy the third element by clear and convincing evidence.  As cited above, the May 20, 2024 letter order credited TEDCO's assertion that production of all responsive documents obviated any need for additional protocols regarding TEDCO's searches.  In this opinion, the Court concludes that TEDCO

---

duty to preserve any documents that Plaintiff seeks in *this* case.  The duty to preserve arises "when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009) (internal quotation marks and citation omitted); *see also Bhattacharya v. Murray*, No. 19-00054, 2022 WL 1510550, at \*4 (W.D. Va. May 12, 2022) (observing that "[i]n the Fourth Circuit," the duty to preserve "seems to begin somewhere between knowledge of the dispute and direct, specific threats of litigation to resolve the same dispute" (cleaned up)).  Plaintiff's reference to the litigation hold memo does not appear relevant to this case because any duty that TEDCO possessed no longer existed after Plaintiff failed to file suit in relation to her EEOC complaint.  That is, any duty that arose out of the memo related to potential litigation stemming from *that* complaint, not the current lawsuit.  Because Plaintiff could not sue for the events in the EEOC complaint, TEDCO no longer had a duty to preserve pursuant to that hold.

produced all material responsive to the subpoenas in its possession, custody, or control or, if not all material, all that Rule 45 requires when considering TEDCO's non-party status.  Therefore, the Court does not find that TEDCO violated the March 14, 2024 opinion and order.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion.  A separate order consistent with this opinion shall issue.[10]


Date: September 23, 2025

_____/s/_____
Charles D. Austin
United States Magistrate Judge

---

[10]  Plaintiff seeks leave to reply to TEDCO's Opposition, and TEDCO opposes this Motion.  (*See* ECFs 126, 127.)  Plaintiff seeks to respond to sovereign immunity arguments that TEDCO presented concerning a federal or state court's ability to compel a governmental unit like TEDCO to comply with a court order.  (*See* ECF 126.)  Because it denies Plaintiff's Motion on other grounds, the Court need not address TEDCO's or Plaintiff's arguments on this issue.  Accordingly, the Court denies Plaintiff's Motion for Leave to File a Reply.