**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ANGELA SINGLETON,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. 1:22-cv-2554-GLR** |
| **ELIZABETH MAZHARI, *et al.*,** | * | |
| **Defendants.** | * | |
| | * * * | |

<u>**MEMORANDUM OPINION**</u>

BEFORE THE COURT is a Motion for Protective Order filed by non-party Maryland Technology Development Corporation ("TEDCO"). (ECF 111.) Plaintiff Angela Singleton opposes the Motion. (ECF 116.) TEDCO and Ms. Singleton (collectively, the Disputants) have briefed the issue, which is now ripe for disposition. Having reviewed the briefs and the attached exhibits, the Court finds that a hearing is unnecessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, the Court GRANTS the Motion for Protective Order.

I.    F<small>ACTUAL</small> B<small>ACKGROUND</small>

This discovery dispute arises in relation to Ms. Singleton's discrimination claims against certain individuals who served in supervisory or other roles while Ms. Singleton was employed by TEDCO. (ECF 78.) Relevant to the pending Motion, Singleton issued subpoenas directed at non-parties ImpactHR and designData Systems Inc. ("designData"), two entities who provide, respectively, human resources and information technology services to TEDCO. (*See* TEDCO Mot. for Protective Order at 2, ECF 111 ("TEDCO's Mot."); Pl.'s Opp'n Ex. 1, ECF 116-1 ("Pl.'s Opp'n Ex. 1") (emails

1

between counsel regarding the protective order dispute).)  Counsel for the Disputants exchanged emails regarding TEDCO's assertion of privilege to documents within the scope of the subpoenas to those providers.  (*See* Pl.'s Opp'n Ex. 1.)  In short, TEDCO claimed attorney-client privilege over a workplace study document performed by a law firm and also asserted that business or other financial information were confidential. (*Id.*)

According to TEDCO, it secured the services of Kollman & Saucier, P.A. ("K&S"), a Maryland law firm, to "investigat[e] the workplace culture at TEDCO in order 'to determine the possible presence of unfair treatment or other inappropriate treatment[,]' due to the concerns about possible legal liability that might arise therefrom[.]"  (TEDCO Mot. at 2)  This resulted in a document provided by K&S to TEDCO (the "K&S Report"). (*Id.*)  Bearing headers indicating, in bold, that it was a confidential, attorney-client communication, the K&S Report "summarized the findings of the Investigation, including employee concerns about alleged bias, and further included legal observations and recommendations[.]"  (*Id.*)

The Disputants also disagree about whether business or confidential information should be subject to a protective order. (*See* TEDCO'S Mot.; Pl.'s Opp'n to TEDCO's Mot. for Protective Order, ECF 116 ("Pl.'s Opp'n."))  The presence and nature of this information is relevant to TEDCO's design and functions, which the Fourth Circuit explored in a recent opinion.  *Singleton v. Md. Tech. and Dev. Corp.*, 103 F.4th 1042 (4th Cir. 2024).  TEDCO is an instrumentality of the State of Maryland, created by the Maryland General Assembly "for the purpose of fostering the growth of new business in Maryland, ultimately for the benefit of its economy and the people of the State." *Singleton*, 103 F.4th at 1044, 1052 (4th Cir. 2024); *see also* Md. Code, Econ. Dev. § 10-

402(b).  TEDCO fulfills several purposes, including assisting private sector entities in receiving and commercializing scientific research performed by educational and other research institutions in Maryland; developing related technologies and/or businesses employing or otherwise advancing such technologies; and obtaining financing or other capital related to such research and development efforts.  *See Singleton*, 103 F.4th at 1045 (quoting Md. Code, Econ. Dev. § 10-402(c)).  Overall, TEDCO benefits the economy and people of Maryland by "administration of more than a dozen funds and programs created by state law."  *Id.*  Certain initiatives administered by TEDCO require applicants to submit, at various times, business or financial information, employee personnel records, and personal identifying information.  *See* Maryland Innovation Initiative, *Company Formation Application Guidelines*, TEDCO, https://perma.cc/7AVY-23SL (last visited Sept. 23, 2025).

As reflected in Plaintiff's Exhibit 1, the Disputants exchanged 18 emails outlining their positions during the course of about two weeks.[1]  TEDCO asserted privilege and confidentiality, both of which Singleton disputed and objected to.  (Pl. Opp'n Ex. 1, at 14-15.)  TEDCO sought to meet and confer on the issues; plaintiff's counsel demanded that TEDCO withdraw its claims or submit a briefing schedule to the Court.  (*Id.* at 7-9.)  TEDCO again sought a meet and confer about a protective order.  (*Id.* at 6-7.)  Plaintiff's counsel again refused, stating they had no desire to "enter protracted negotiations on a broad protective order" that counsel did not expect would end in an agreement.  (Pl.

---

[1] Because the emails are a collection of communications lacking their own page numbers, citations to Plaintiff's Exhibit 1 in this opinion use the page number noted in the filing header.

Opp'n Ex. 1, at 6.)  Unable to resolve their substantive differences, but agreeing on a schedule for formal briefing, the parties briefed the matter for the Court to resolve.

## II.    LEGAL STANDARD

"When parties cannot agree on whether a confidentiality order is necessary, the court invokes its 'broad discretion in resolution of discovery problems that arise in cases pending before [it].'" *Duncan v. Costco Wholesale Corp.*, No. 20-3605-SAL, 2021 WL 5827272, at *2 (D.S.C. Apr. 12, 2021) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (citation omitted)).  Federal Rule of Civil Procedure 45 permits parties to "issue subpoenas to [non-parties] in possession of relevant information, seeking production of 'designated documents, electronically stored information, or tangible things in that [non-party]'s possession, custody, or control.'" *Am. Home Assurance Co. v. KBE Bldg. Corp.*, No. 13-1941-CCB, 2015 WL 348292, at *12 (D. Md. Jan. 13, 2015) (quoting Fed. R. Civ. P. 45 (a)(1)(A)(iii)). "The scope of discovery allowed under a [non-party] subpoena is the same as the scope of discovery allowed under Rule 26." *Hall v. Balt. Police Dep't*, No. 24-1137-RDB, 2025 WL 509130, at*4 (D. Md. Feb. 13, 2025); *see also Singletary v. Sterling Transp. Co., Inc.*, 289 F.R.D. 237, 240-41 (E.D. Va. 2012); *Papanicolas v. Project Execution & Control Consulting, LLC*, No. 12-1579-CBD, 2015 WL 1242755, at *2 (D. Md. Mar. 17, 2015).  Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery . . . [and] requiring that a trade secret or other confidential research, development, or commercial

information not be revealed or be revealed only in a specified way[.]" Fed. R. Civ. P. 26(c)(1)(A), (G).

Attorney-client privilege "affords confidential communications between lawyer and client complete protection from disclosure." *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003) (citation omitted). The party asserting attorney-client privilege must establish its applicability by demonstrating the existence of an attorney-client relationship, that the challenged document or communication is protected, and that the privilege has not been waived. *See, e.g.*, *id.*; *Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 409 (D. Md. 2005).

Likewise, a party claiming confidentiality bears the burden of proving that "(1) the material in question is . . . confidential information within the scope of Rule 26(c), and (2) disclosure would cause an identifiable, significant harm." *Deford v. Schmid Prods. Co., a Div. of Schmid Labs., Inc.*, 120 F.R.D. 648, 653 (D. Md. 1987); *see also Flo Pac, LLC v. NuTech, LLC*, No. 09-510-WDQ, 2011 WL 13214114, at *2-3 (D. Md. Apr. 12, 2011) (applying the same test to claims of confidentiality "as defined in the governing confidentiality order"). The asserting party must support its claim by "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm." *Waterkeeper All., Inc. v. Alan & Kristin Hudson Farm*, 278 F.R.D. 136, 140 (D. Md. 2011) (internal quotations and citations omitted). If the party meets its burden, then "the party seeking disclosure 'must establish that the information is sufficiently necessary to [their] case to outweigh the harm of disclosure.'" *Minogue v. Modell*, No. 03-3391-CCB, 2011 WL 1308553, at *4 (D. Md. Mar. 30, 2011) (quoting *Wilson v. C.R. Bard, Inc.*, 149 F.3d 249, 252 (4th Cir. 1998)).

## III.  ANALYSIS

For the reasons stated below, the Court grants the Motion for Protective Order. The Disputants present several arguments regarding timeliness and other procedural considerations in addition to substantive issues related to privilege and confidentiality. The Court addresses these in turn.

### A. The Motion is timely.

Singleton maintains that TEDCO's Motion is untimely and that TEDCO lacks "good cause" to excuse such untimely filing.  (Pl.'s Opp'n at 8-9.)  She maintains that TEDCO missed its window by seeking protection only after providing Defendants with access to TEDCO servers and months after ImpactHR responded to the July 29, 2024 subpoena.  (*Id*. at 9.)  In support, she cites authority from this Court and the Eastern District of Virginia.  *See Williams v. Big Picture Loans, LLC*, No. 17-461, 2020 WL 7680551, at *7 (E.D. Va. Dec. 18, 2020); *D.J.'s Diamond Imps., LLC v. Brown*, No. 11-2027-WMN, 2013 WL 1345082, at *3 n.5 (D. Md. Apr. 1, 2013).  TEDCO opposes for four reasons: (1) Rule 26 does not set a time limit for seeking a protective order, (2) a previous opinion of the Court permitted TEDCO to seek rulings related to non-disclosure of privileged information;[2] (3) the protective order addresses material not yet produced by subpoena recipient designData, and (4) any delays were at least, in part,

---

[2] *See* ECF 105; *Singleton v. Mazhari*, No. 22-2554-GLR, 2024 WL 4644644 (D. Md. Oct. 30, 2024).  The undersigned denied without prejudice TEDCO's assertions of privilege as to an unspecified number of documents produced by ImpactHR.  The Court identified TEDCO's "blanket" assertions of privilege as fatal to its Rule 45(e)(2)(B) request but noted it would consider a timely and properly supported motion concerning privilege or confidentiality.  *See* 2024 WL 4644644, at *4-5.  The Court also found that TEDCO's motion pursuant to Rule 45(e)(2)(B)—which addresses privileged or trial preparation material—was not the proper vehicle to address confidentiality concerns. *Id*. at *5.

attributable to Singleton's conduct.  (TEDCO Reply in Supp. of Mot. for Protective Order at 3-4, ECF 117 ("TEDCO Reply")).

Singleton fails to demonstrate that TEDCO's request is late under the governing rules and principles or otherwise devoid of good cause.  "While [Rule 26] does not establish a time limit within which a party may move for a protective order, such motion must be 'seasonable,' meaning 'made prior to the date set for producing the discovery.'" *Brown*, 2013 WL 1345082, at *3 n.5 (quoting *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408, 413 (M.D.N.C. 1991)); *see also Williams*, 2020 WL 7680551, at *2 (summarizing the same principles set forth in *Brittain*).  Even so, a late filing may be excused for good cause.  *Williams*, 2020 WL 7680551, at *2 (citing *Brittain*, 136 F.R.D. at 413).  Both cases acknowledge that a request may be permissible even if made after the discovery date where, for example, the moving party lacked time to apply for a protective order before the discovery was sought.  *Williams*, 2020 WL 7680551, at *2; *Brown*, 2013 WL 1345082, at *3 n.5.  In *Williams*, the court found the motion for protective order untimely because the defendant filed it one week after the date set for discovery despite providing the plaintiff permission to subpoena the relevant third parties three months earlier.  2020 WL 7680551, at *2.  The *Williams* court explained that the inaction after granting permission to seek materials from third parties undermined any argument for good cause.  *Id.*  In *Brown*, the defendants failed to respond to discovery, and the court granted a motion to compel responses because, among other things, defendants failed to seek a protective order that may have altered its discovery obligations.  2013 WL 1345082, at *3 (noting that under Rule 37, a pending motion for a protective order may excuse certain failures to respond).

Neither of the circumstances in those cases persuade the Court that TEDCO has missed its chance for relief. Unlike *Brown*, there is a request for a protective order. Unlike the circumstances in *Williams*, TEDCO, as the party seeking the protective order, did not wait several months after granting permission to subpoena the allegedly protected information from other parties. In fact, Singleton characterizes this situation as TEDCO acting one month after learning of ImpactHR's subpoena response and "several years after the beginning of the litigation." (Pl.'s Opp'n at 9.) She cites no authority setting deadlines for protective order requests based on the filing of a lawsuit. The Court is not persuaded that TEDCO's actions are untimely based on the fact that on September 13, 2024, it learned of Impact HR's response. (*Id.*) If anything, Singleton's exhibits suggest TEDCO acted in a timely manner—the email exchange between relevant counsel began on that date Singleton cites that TEDCO became aware of the disclosure and continued for two weeks. (Pl.'s Opp'n Ex. 1, at 15.) That exchange ended with an agreement on a briefing schedule on this issue, and a motion proposing that schedule was filed the same day. (*Id.*, at 1). The parties then adhered to the briefing schedule. This circumstance strikes the Court as much different from one where a party either took no action (*Brown*) or had advance notice of specific requests and productions to which it would object after the materials were provided (*Williams*). Furthermore, TEDCO and Singleton filed a joint motion to modify the scheduling order on October 29, 2024, requesting the Court to stay the discovery deadline until the parties resolved multiple discovery disputes, including this one. (*See* ECF 103.) When considered in context of the efforts to resolve the disputes immediately upon TEDCO's awareness of ImpactHR's disclosure, the Court finds this also favors a finding that TEDCO's motion is timely. *Cf. Barten v. State Farm Mut. Auto. Ins. Co.*, No. 12-00399-TUC-CKJ, 2014 WL

348215, at *3 (D. Ariz. Jan. 31, 2014) (observing that a request to extend the discovery deadline weighs in favor of finding timeliness). In short, TEDCO's conduct and efforts appear far more seasonable than those by the movants in *Williams* and *Brown*. Therefore, TEDCO's motion is timely.

### B. There is good cause to issue the protective order.

In determining whether to enter a protective order, the Court examines whether the proponent establishes good cause for such an order. Fed. R. Civ. P. 26(c)(1). In examining both the requirements of the Court's Local Rules and state law relevant to the specific requests here, the Court finds good cause exists.

1. The proposed confidential information falls within the scope of Federal Rule of Civil Procedure 26(c)(1)(G).

The Court must evaluate TEDCO's proposed confidentiality designations under Federal Rule of Civil Procedure 26(c). *See, e.g.*, *Lewis v. Prince George's Cnty. Bd. of Educ.*, No. 21-2720-JKB, 2024 WL 404333, at *1-2 (D. Md. Feb. 2, 2024); *Addi v. Corvias Mgmt.-Army, LLC*, No. 19-3253-ELH, 2020 WL 7707039, at *1 (D. Md. Dec. 28, 2020); *Metro. Reg'l Info. Sys, Inc. v. Am. Home Realty Network*, No. 12-954-AW, 2013 WL 3442764, at *1 (D. Md. July 8, 2013); *Flo Pac*, 2011 WL 13214114, at *3; *Minter v. Wells Fargo Bank, N.A.*, No. 07-3442-WMN, 2010 WL 5418910, at *1 (D. Md. Dec. 23, 2010). TEDCO, as the party claiming confidentiality, must demonstrate—through specific facts, not broad or conclusory assertions—that the material is privileged or confidential as contemplated by Rule 26 and that disclosure would cause significant harm. *Waterkeeper Alliance*, 278 F.R.D. at 140; *Deford*, 120 F.R.D. at 653; *Flo Pac*, 2011 WL 13214114, at *3.

TEDCO contends that business information falls within the scope of Rule 26 confidential information for several reasons.  (TEDCO Mot., at 1.)  In short, TEDCO's statutory duties require the collection of trade secrets, confidential business or financial information, or employee records from various businesses in the state; production of such information without protection could lead to the disclosure of privileged or confidential information in a manner that harms businesses' competitive positions, impairs TEDCO's ability to collect such information in the future (in efforts to perform its duties), and pose added increase to data security risks.[3]  (TEDCO Reply at 4-5.) TEDCO also notes that documents containing confidential business information, including trade secrets, and employee or other personal information are protected by the Maryland Public Information Act from public, unrestricted disclosure.  (TEDCO Mot. at 4 (citing Md. Code, Gen. Provisions §§ 4-311, 4-331, 4-335)).  Singleton opposes a finding of good cause, contending that TEDCO's proposed order is vague and overbroad.  (Pl.'s Opp'n at 9-10.)  She also says that TEDCO fails to identify significant, concrete harm that might arise from the disclosure of the business information TEDCO describes or the K&S report.  (*Id.* at 10-12.)

Because TEDCO is a state instrumentality subject to limitations on the State of Maryland itself, the Court will consider the impact, if any, on legislative designations related to confidentiality.  *See Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 576-77 (D. Md. 2010) (noting that a party could pursue a Rule 26 protective order "regarding the production of records within the scope of the MPIA that would adequately address any

---

[3] On this last point, TEDCO contends that Ms. Singleton returned her employer-assigned laptop two weeks after her discharge and deleted information from her laptop. (*See* TEDCO Reply at 5-6 and Ex. 3.)

confidentiality concerns"); *Shriner v. Annapolis City Police Dep't*, No. 11-2633-ELH, 2012 WL 959380, at *4 (D. Md. Mar. 19, 2012) (issuing a protective order to account for future disclosure of information protected by the MPIA).  The MPIA is Maryland's analogue to the federal Freedom of Information Act ("FOIA").  *Mezu*, 269 F.R.D. at 576.  Therefore, "decisions interpreting the [FOIA] are persuasive in interpreting counterpart provisions of the MPIA."  *Id.* (internal quotation marks and citations omitted).  Because FOIA "does not displace discovery in [] civil litigation under the Federal Rules of Civil Procedure[,]" *In re Al Fayed*, 36 F. Supp. 2d 694, 695 (D. Md. 1999), it follows that "the MPIA does not bar discovery of otherwise-discoverable documents[,]" *Mezu*, 269 F.R.D. at 576.

FOIA Exemption 4 "shields from mandatory disclosure 'commercial or financial information obtained from a person and privileged or confidential.'"  *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 433 (2019) (quoting 5 U.S.C. § 552(b)(4)).  Commercial or financial information is "confidential" under Exemption 4 "where [it] is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy[.]"  *Argus Leader*, 588 U.S. at 440.  The Appellate Court of Maryland, in a reported opinion, recently adopted this test in relation to Maryland Code, General Provisions Article, Section 4-335.  *The Abell Found. v. Balt. Dev. Corp.*, 320 A.3d 495, 518 (Md. 2024).

FOIA Exemption 6 prevents disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]"  5 U.S.C. § 552(b)(6).  Courts should give the "phrase 'similar files' . . . a broad, rather than a narrow, meaning."  *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 600 (1982).  Moreover, the information in the "similar files"

must concern "an individual that can be identified as applying to that individual." *Havemann v. Astrue*, No. 10-1498-ELH, 2012 WL 4378143, at \*5 (D. Md. Sept. 24, 2012) (cleaned up).  "[T]o determine whether an invasion of [personal] privacy" is clearly unwarranted, courts must "weigh[] the individual's privacy interests against the public interest in disclosure." *Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 332 (4th Cir. 2016).  The public's interest in disclosure is met "to the extent . . . disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* (internal quotation marks and citations omitted).  Exemption 6 is aimed "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Core v. U.S. Postal Serv.*, 730 F.2d 946, 947 (4th Cir. 1984).

Similarly, under the MPIA, "a custodian shall deny inspection of a personnel record of an individual, including an application, a performance rating, or scholastic achievement information."  Md. Code, Gen. Provisions § 4-311(a).  Personnel records under § 4-311 also include "records that directly pertain to employment and an employee's ability to perform a job[,]" *Glass vs. Anne Arundel Cnty.*, 160 A.3d 658, 681 (Md. 2017) (internal quotations and citation omitted), including any record relating to an employee's "hiring, discipline, promotion, dismissal, or any matter involving [their] status as an employee[,]" *Kirwan v. The Diamondback*, 721 A.2d 196, 200 (Md. 1998).  Section 4-331 of the MPIA requires a custodian to "deny inspection of the part of a public record that contains the home address, personal telephone number, or personal e-mail address of an employee of a unit or an instrumentality of [Maryland] or of a political subdivision[.]"  Md. Code, Gen. Provisions § 4-331.

Balancing these statutory limitations on disclosure and the need for civil discovery, the Court finds good cause to issue a protective order for the categories TEDCO identifies.  The Court agrees that information protected by the MPIA is confidential information for purposes of Rule 26(c)(1).  The Court also finds that TEDCO meets its burden to demonstrate that disclosure of such information would cause an identifiable, significant harm.  Given TEDCO's design and purpose set forth by statute, if a party disclosed information provided to TEDCO by business applicants, the harm may be two-fold.[4]  First, vulnerability of such information may erode trust in TEDCO and cause a decline in applications—an undermining of the General Assembly's design—if the submitted application could be obtained without protection via civil discovery as an end run around MPIA limitations.  Second, such disclosure would undermine any given business's interest or competitive positions—an outcome contrary to TEDCO's purpose.  While TEDCO does not articulate specific facts for a given applicant, the Court does not find that necessary in this circumstance, where TEDCO's

---

[4] The Court notes that TEDCO argued these harms based on FOIA cases that may no longer be good law.  These cases explored substantial harm relevant to the application of FOIA exemptions.  (TEDCO Reply at 5 (citing *Comstock Int'l (U.S.A.), Inc. v. Exp.-Imp. Bank of U.S.*, 464 F. Supp. 804, 807 (D.D.C. 1979); and then citing *Nadler v. F.D.I.C.*, 899 F. Supp. 158, 160 (S.D.N.Y. 1995)).  TEDCO cites *Comstock* in arguing that unrestricted disclosure "would impair [TEDCO]'s ability to execute its statutory mandate" because applicants may not provide the information TEDCO requires to provide assistance as directed by Maryland law.  (TEDCO Reply at 5.)  It cites *Nadler* in support of its arguments about harm to applicants' competitive positions.  (*Id.*)  Both cases applied a test articulated by the D.C. Circuit in *National Parks and Conservation Association v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974).  *See Comstock*, 464 F. Supp. at 807; *Nadler*, 899 F. Supp. at 160.  However, *Argus Leader* expressly overruled the *National Parks* test.  *Argus Leader*, 588 U.S. at 437.  Therefore, the Court does not view those cases—with their reliance on the now-overruled *National Parks* test—as reflecting current FOIA law.  However, the Court is not aware of authority preventing these alleged harms from otherwise being considered as identifiable, significant harms for purposes of Rule 26(c).  Neither *Argus Leader* nor *National Parks* referenced Rule 26(c)'s language or civil discovery.

design and purpose relies on collection of such information under assurances of privacy. As further support of the reasonableness of this approach, the Court notes that even by TEDCO's terms, there exists a process for Singleton to object to confidentiality on a document-by-document basis.

The Court is satisfied that TEDCO articulates a specific, identifiable, and non-conclusory harm and, perhaps more importantly, proposes that the harms be addressed by restriction rather than non-disclosure. *See Mezu*, 269 F.R.D. at 576-77. More specifics or *in camera* review may be appropriate if a party seeks to avoid any disclosure at all. But a protective order restricting use—rather than preventing discovery—is a sufficient safeguard to address the asserted harms while advancing the aims of civil discovery. *See Shriner*, 2012 WL 959380, at *4. For these reasons, a protective order is appropriate in this case.

2. <u>The K&S Report falls within the attorney-client privilege.</u>

To obtain the protection of attorney-client privilege, the proponent must show that the document "is a confidential communication between counsel and client made primarily for the purposes of obtaining legal advice or services from the attorney." *Addi v. Corvias Management-Army, LLC*, 339 F.R.D. 594, 597 (D. Md. 2021) (citation omitted). Because attorney-client privilege "impedes the full and free discovery of the truth, and is in derogation of the public's right to every [person]'s evidence," *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984) (citations omitted), it "is to be narrowly construed," *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998). The proponent must assert attorney-client privilege "with particularity for each document, or category of documents," *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 267 (D. Md. 2008), "and general assertions of privilege are insufficient[,]" *Bost v.*

14

*Wexford Health Sources, Inc.*, No. 15-3278-ELH, 2017 WL 11453989, at *2 (D. Md. Jan. 31, 2017). The privilege does not extend to any and every communication that may involve an attorney and their client. *U.S. v. Cohn*, 303 F. Supp. 2d 672, 683 (D. Md. 2003); *Melada v. Giant of Maryland, LLC*, No. 20-1509-PJM, 2023 WL 4273370, at *1 (D. Md. June 28, 2023). Instead, it applies only where the proponent establishes that:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Hawkins*, 148 F.3d at 383 (citations omitted).

TEDCO argues that the K&S Report meets the Fourth Circuit's test for attorney-client privilege.[5] (TEDCO Mot. at 3-4 (citing *In re Grand Jury Subpoena*, 341 F.3d at 335)). TEDCO maintains that the K&S Report enabled K&S "to provide sound legal advice regarding potential legal liability that could arise from unfair or inappropriate treatment[.]" (TEDCO Mot. at 3 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)). It also emphasizes that the K&S Report (i) arose from an internal investigation and (ii) contained legal conclusions about past events and recommendations for future

---

[5] TEDCO devotes one sentence to arguing that the K&S Report is protected by the work product doctrine. (TEDCO Mot. at 4.) Notwithstanding that it finds another privilege applicable, the Court would not address that undeveloped contention. *See Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012) (finding issue "waived because [the party] fails to develop this argument to any extent in its brief"); *Horsetail Techs., LLC v. Del. State Police Fed. Credit Union*, No. 18-556-ELH, 2020 WL 3402302, at *20 (D. Md. June 19, 2020) ("Undeveloped and perfunctory arguments are deemed waived.") (citations omitted); *LaBudde v. Phoenix Ins. Co.*, No. 21-197-FL-BLM, 2025 WL 52010, at *17 n.13 (E.D.N.C. Jan. 8, 2025) (applying Fourth Circuit waiver standards to arguments raised in a discovery dispute).

conduct—characteristics that warrant the protection of attorney-client privilege. (*Id.* at 4 (citing *In re Allen*, 106 F.3d 582, 605 (4th Cir. 1997); and then citing *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014))). TEDCO also contends that Singleton waived any privilege challenge by asserting to the Court that "she does not seek any information or documents protected by the attorney-client privilege or work product doctrine related to the ImpactHR or law firm investigation." (*Id.* (quoting ECF 63, at 3)).

Singleton counters that because TEDCO has not produced the K&S Report for *in camera* review, its privilege claim is not properly before the Court and, in any event, fails to satisfy the *In re Grand Jury Subpoena* test. (Pl.'s Opp'n at 13-15.) She also contends that it was TEDCO who waived its rights in this dispute by disclosing the K&S Report to ImpactHR, who produced it—along with other TEDCO material—in response to Singleton's July 29, 2024 subpoena. (*Id.* at 14 n.4.) She also challenges the reliance on the testimony of Terry Rauh, TEDCO's Chief Operating Officer, to describe the contents of the K&S Report because he "had not seen it" and therefore lacked personal knowledge. (*Id.* at 14; *see also* Deposition of Terry Rauh, ECF 116-3 ("Rauh Dep."), at 98:4-5.)

The Court finds that TEDCO satisfies its burden to show the K&S Report is protected by attorney-client privilege. Based on the record before it, the Court is satisfied that TEDCO was a client of K&S, a law firm that created the K&S Report in connection with its role as TEDCO's outside counsel. Upon TEDCO's request, K&S conducted an internal investigation of TEDCO's workplace culture and created the K&S Report for the purpose of providing legal advice on TEDCO's potential liability arising from alleged unfair treatment. The Court agrees that this is a proper assertion of

privilege.  *See In re Allen*, 106 F.3d at 605 (finding that attorney-client privilege applied to a "report, though incomplete, contain[ing] legal conclusions as to past events, as well as recommendations for future conduct" and resulting from an internal investigation); *In re Kellogg Brown & Root, Inc.*,756 F.3d at 760 ("In the context of an organization's internal investigation, if one of the significant purposes of the internal investigation was to obtain or provide legal advice, the privilege will apply.").

The Court is unmoved by Singleton's challenges to Mr. Rauh's knowledge and insistence that TEDCO must produce the K&S Report for *in camera* review.  The Court does not believe that, in this context, Mr. Rauh needs to have read the report to be credible in asserting the purpose of the report and communications.  Furthermore, while *in camera* review is available, it is not necessary in every case.  *See Victor Stanley*, 250 F.R.D. at 265-66 (explaining the steps required before *in camera* review can be justified and noting that such review is disfavored).  Singleton is correct that the Court previously cautioned TEDCO that it would not "take on, without much assistance, [TEDCO's] burden of demonstrating the privilege's applicability."  *Singleton v. Mazhari*, 2024 WL 4644644, at *4.  But the undersigned reiterated this burden in the context of TEDCO's broad assertion that privilege extended to emails (and their attachments) between it and its outside counsel K&S.  *Id.*  That deficiency does not mirror the present circumstance: a more focused demonstration regarding a single document, supported by descriptions of the document and the circumstances giving rise to its creation.  This demonstration makes the requisite prima facie showing.  Singleton fails to demonstrate why *in camera* review is necessary.  *See N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011) ("Once a prima facie showing of a privilege has been made, an opposing party can justify *in camera* inspection of the documents by advancing a factual

17

basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that the information in the materials is not privileged." (internal quotation marks and citations omitted)).

As to the fourth element, on this record, the Court does not find that the privilege has been waived.  TEDCO and Singleton mention, briefly, the waiver issue in broad terms.[6]  In general, the attorney-client privilege is waived by "[a]ny voluntary disclosure by the client to a third party."  *U.S. v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).  In some cases, the privilege extends to communications made in the presence of or provided to an agent of the party asserting privilege.  *See, e.g.*, *Flo Pac, LLC v. NuTech, LLC*, No. 09-510-WDQ, 2010 WL 5125447, at *8 (D. Md. Dec. 9, 2010).  Many cases addressing the impact of a third-party consider whether that party's presence during or receipt of an attorney-client communication destroys the confidentiality associated with such communication.  *See id.*  Neither side cites authority informative in this sort of circumstance, where the third party who allegedly breaks privilege is an agent of the proponent, secured for the purpose of providing data management services on behalf of and in the interest of the proponent.  There appears to be no dispute about the relationship between TEDCO and designData and the structure of their contract to maintain confidentiality of information designData may receive within the scope of its capacity as a cloud storage and management provider.[7]  The Court finds that the agency

---

[6] TEDCO mentions it in a paragraph discussing the duties of confidentiality arising from its contract with designData, which is precluded by that agreement from disclosing certain information.  (TEDCO'S Mot. at 2.)  Singleton says this one-paragraph discussion does not show that privilege is not waived.  (Pl.'s Opp'n at 13.)

[7] In relation to issues raised in a separate—but somewhat related—dispute, designData filed a letter outlining its position that it is not subject to a subpoena for TEDCO's data as a result of the Stored Communications Act, 18 U.S.C. § 2701 et seq.. (ECF 112.)  That issue is not addressed by either TEDCO or Singleton within the context

relationship between TEDCO and designData (and, for that matter, ImpactHR) suggests that the privilege is not waived by their having access to TEDCO's materials. Based on the relationship with designData and ImpactHR, their potential access to the K&S Report does not seem to be a "disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship" such that waiver is appropriate. *Jones*, 696 F.2d at 1072.

Singleton takes the position that ImpactHR's production of the K&S Report waived TEDCO's privilege. (*See* ECF 99.) In her briefing here, Singleton incorporates by reference those arguments made with respect to ImpactHR. The relevance of those arguments to this dispute appears to be Singleton's assertion that the K&S Report lost privilege if ImpactHR produced it.[8] When there is a disclosure of privileged or protected material by a third-party or an agent, Federal Rule of Evidence 502 applies "to determine whether the disclosure of a privileged or protected document results in a waiver." *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 444 (D. Md. 2012); *see also U.S. Home Corp. v. Settlers Crossing, LLC*, No. 08-1863-DKC, 2012 WL 3025111, at *6-7 (D. Md. July 23, 2012). Under that Rule, a "disclosure does not operate as a waiver in a [f]ederal . . . proceeding if (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly

---

of the protective order dispute. Other than noting that that argument does not impact the Court's determinations on privilege and potential waiver, the Court will address that issue as necessary when resolving other disputes regarding designData's obligations.

[8] Otherwise, the Court finds little assistance in arguments made regarding a different provider that contracts to provide different services and has, unlike designData, already responded to a subpoena. Furthermore, those arguments arose in the context of TEDCO's broad assertion of privilege as to all of ImpactHR's production—an error that TEDCO does not repeat in its privilege assertion here.

took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b). The Disputants do little to address these issues. But the Court finds that all three elements are met. The disclosure appears to be inadvertent, considering the nature of the document, the proponent's efforts to rectify disclosure shortly after learning of it, and the fact that it was produced by a different party rather than the proponent itself. *See Victor Stanley*, 250 F.R.D. at 259 (listing factors to be considered in determining inadvertence). As noted above, TEDCO took steps toward a protective order shortly after learning of ImpactHR's production and, relevant to this issue, narrowed its privilege assertion to the K&S Report. For the reasons explained above, TEDCO's request for a protective order is timely and justified notwithstanding that ImpactHR already produced documents that may include the K&S Report.

      3.   <u>TEDCO satisfied its obligation to meet and confer on the proposed protective order.</u>

Both the Federal Rules and Local Rules require a party seeking a protective order to certify its efforts at a good faith attempt to confer and resolve any disputes about the proposed order before seeking the Court's intervention. Fed. R. Civ. P. 26(c)(1); Loc. R. 104.7; *see also Chavis v. Plumbers & Steamfitters Local 486 Pension Plan*, No. 17-2729-ELH, 2019 WL 4879015, at *3 (D. Md. Oct. 3, 2019). The Local Rules require a "reasonable effort," which is something more than a single email or letter to the opposing party; there must be an in-person, telephonic, or videoconference meeting for a reasonable duration. Loc. R. 104.7. Regarding Rule 26(c)'s provision, courts have found the meet-and-confer requirement satisfied where parties undertake meaningful conduct towards resolution and, due to conflicting positions, "subsequent attempts to

resolve the dispute would be ineffectual." *In re Cree, Inc. v. Secs. Litig.*, 220 F.R.D. 443, 446 (M.D.N.C. 2004); *see Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 198 (N.D. W. Va. 2000) (meet-and-confer requirement satisfied where "any telephone call or in person meeting would not likely have been successful in resolving [a] discovery dispute"); *see also Monroe v. Sisters of Saint Francis Health Servs., Inc.*, No. 09-411, 2010 WL 4876743, at *2-3 (N.D. In. Nov. 23, 2010) (requirement satisfied where "[a]fter discussing their positions, the parties were unable to reach an agreement[,]" and "continued contact would not likely have been successful in resolving the discovery dispute"). Likewise, while more than an email or two will often be required, the Court may find the Local Rules satisfied by a fulsome email exchange that did not resolve the dispute. *See Proa v. NRT Mid-Atl., Inc.*, No. 05-2157-AMD, 2008 WL 11363286, at *11 (D. Md. June 20, 2008).

The Court rejects Singleton's argument that TEDCO failed to meet and confer before filing the Motion. As reflected in Singleton's exhibit, the parties exchanged several emails regarding TEDCO's request (and Singleton's counterproposal) to no avail. More to the point, Plaintiff's counsel thrice rejected TEDCO's request to meet and confer regarding a protective order. This conduct made clear that any additional attempts to resolve through the required meet and confer process would have been ineffectual in even having the conversation, let alone resolving the issue. *In re Cree*, 220 F.R.D. at 446. The Court is perplexed that Singleton now advances this argument.

The Court also rejects Singleton's contention that a failure to meet and confer with the Defendants requires denial. It is true that Defendants, by virtue of being named parties to the lawsuit, are "affected parties" under Rule 26(c). It is also true that failure to comply with Local Rule 104—while not invited or easily overlooked—does not

always require dismissal of a motion. *See Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 497 (D. Md. 2000). Instead, dismissal is required only where the non-moving party would "suffer any undue prejudice as a result of the moving party's failure to comply with Local Rule [104.7.]" *Chavis*, 2019 WL 4879015, at *4. Singleton offers no reason Defendants would suffer from undue prejudice. The lack of input from Defendants—who are, no doubt, aware of these document disputes given the activity on the docket—underscores the absence of undue prejudice. Additionally, considering the history of failed attempts to confer, dismissal "on procedural grounds would lead to pointless duplicative work for the parties and for the Court, as the Motion would almost inevitably return here later, after what would surely be a perfunctory [] conference." *Meyler v. Town of Ocean City*, No. 23-0082-JKB, 2023 WL 5984406, at *2 (D. Md. Sept. 14, 2023).

### 4.  The Motion complies with Local Rule 104.13.

In ascertaining the existence of good cause and an appropriate scope, the Court has looked to Local Rule 104.13, entitled "Proposed Confidentiality Orders." *See, e.g., Meyyur v. Hartford Fin. Servs. Grp. (HIG)*, No. 24-1680-JMC, 2024 WL 5055213, at *2 (D. Md. Dec. 10, 2024); *Fangman v. Genuine Title, LLC*, No. 14-0081-RDB, 2015 WL 8915564, at *7-8 (D. Md. Dec. 15, 2015). Local Rule 104.13 provides that:

> Any proposed confidentiality order shall include (a) a definition of confidentiality consistent with [Rule] 26(c); (b) a method for challenging particular designations of confidentiality with the burden remaining on the party seeking confidentiality to justify it under Rule 26(c); (c) a provision that whenever materials subject to the confidentiality order (or any pleading, motion or memorandum referring to them) are proposed to be filed in the Court record under seal, the party making such filing must simultaneously submit a motion and accompanying order pursuant to [Local Rule] 105.11; and (d) a provision permitting the Clerk to return to counsel or destroy any sealed material at the end of the litigation.

Loc. R. 104.13.  TEDCO's proposed order defines confidentiality as the K&S Report, trade secrets and confidential business or financial information as defined in Maryland Code, General Provisions Article, § 4-335; employee personnel records as defined in Maryland Code, General Provisions Article, § 4-331; and personal identifying information as defined in Maryland Code, General Provisions Article, § 4-311.  (*See* Proposed Protective Order, ECF 111-2, at ¶ 1.) The proposed order also provides a method for challenging confidentiality designations.  (*Id*. at ¶ 2.)  The Court finds that Paragraphs 2 and 5 of TEDCO's proposed order satisfy Local Rule 104.13(c)-(d).

## IV.  CONCLUSION

For the reasons stated herein, TEDCO's Motion for Protective Order is GRANTED. The protective order governing discovery in this case will have the terms set forth in TEDCO's proposed order attached to its Motion.  A separate implementing order shall issue.


Date: September 25, 2025                  _____/s/_____
                                          Charles D. Austin
                                          United States Magistrate Judge